392 So.2d 1043 (1980)
STATE of Louisiana
v.
Charles H. WESTBROOK.
No. 65132.
Supreme Court of Louisiana.
December 15, 1980.
*1044 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard Knapp, Dist. Atty., Lester A. Robertson, Asst. Dist. Atty., for plaintiff-respondent.
James Miguez, Lake Charles, for defendant-relator.

ON REHEARING
WATSON, Justice.
Defendant, Charles H. Westbrook, was convicted at a bench trial of driving while intoxicated on September 30, 1978, his second offense. LSA-R.S. 14:98 C. The sentence was 125 days in the parish jail and a fine of $250, or 40 additional days in jail.
Originally, the conviction and sentence were reversed per curiam, 385 So.2d 13 (La.) because the State failed to show that the person who checked the PEI machine had been certified by the Department of Health and Human Resources.[1] LSA-R.S. 32:663.[2]
A certificate of inspection filed with the Clerk of Court of Calcasieu Parish states that the PEI machine used to test defendant, No. 51, was in proper functioning condition on August 3, 1978. Regulation 6[3] *1045 requires a maintenance check of each machine at least once every four months. The prior opinion found that it was also necessary for the individual checking the machine to be certified. However, there is no requirement in the Rules and Regulations that the person checking the machine be certified. Although the technicians doing maintenance repairs must be certified, Regulation 6E, the machines can be checked by anyone. The prior opinion erred in requiring that those checking the machines be certified. That opinion is now recalled and vacated.
The other assignments of error are as follows:

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court erred in allowing introduction of a prior D.W.I. conviction because sufficient connexity was not shown between him and the prior offender, relying on City of Monroe v. French, 345 So.2d 23 (La., 1977). In City of Monroe v. French, the only point of identity with the prior conviction was defendant's name. Here, in addition, the driver's license number, sex, race and birth date all identified the prior offender with defendant. The State carried its burden of proving that this defendant is the Westbrook previously convicted of D.W.I.
This assignment has no merit.

ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE
Defendant contends that the PEI test results were inadmissible because the manufacturer's certificate of the quality of the chemical ampul used in the machine was insufficient, and the ampul had not been spotchecked.
Regulation 5 provides:
"Each lot of ampuls shall be certified at the factory by the manufacturer as to their standard of quality. This certificate shall be prima facie evidence as to the standard of quality of the ampul."
The State introduced a "Certificate of PEI Ampul Standard by Quality" certified by the head chemist and custodian of records for Intoximeters, Inc. The certificate, dated August 11, 1978, states that the ampuls from this lot, number 7806, were filled on May 23, 1978, and attests to their standard of quality. It is adequate compliance with Regulation 5.
Regulation 6A requires that each lot of ampuls be spotchecked during the maintenance check. However, the maintenance check of this machine, on August 3, 1978, involved another ampul group, lot number 2006. There is no evidence that ampul group number 7806, the one used in defendant's test, was spotchecked. However, defendant was tested on September 30, 1978. This was within four months of the date of the manufacturer's certificate of quality. The State can prove chemical quality of the ampuls by the manufacturer's certificate in lieu of spotchecking. State v. Goetz, 374 So.2d 1219, (La., 1979). The manufacturer's certificate was dated within four months of the ampul's use and sufficed to prove the ampul's quality.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER FIVE
The defendant contends that the trial court erred in allowing introduction of *1046 the PEI result without evidence about the type of testing done when the machine was recertified. However, the Rules and Regulations do not mandate a particular method or type of testing.
This assignment of error lacks merit.
For the foregoing reasons, the prior opinion of this court is vacated and the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The testing methods at that time were according to the Rules and Regulations of the Department of Health and Human Resources. These are now promulgated by the Department of Public Safety. See State v. Morrison, 392 So.2d 1037 (La., 1980) handed down this date and decided under the new regulations.
[2] LSA-R.S. 32:663 provides:

"Chemical analyses of the person's blood, urine, breath or other bodily substance, to be considered valid under the provisions of this Part, shall have been performed according to methods approved by the Department of Public Safety and by an individual possessing a valid permit issued by said department for this purpose. The Department of Public Safety is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the department."
[3] Regulation 6 provides as follows:

"Maintenance checks will be performed on a routine basis at least once every four months, by the Louisiana State Police Crime Laboratory. Items to be checked shall be not limited to the following:
"A. Each lot of ampuls shall be spotchecked for performance.
"B. Clean instrument.
"C. Calibration check of standard ampuls.
"D. Running of a known alcohol solution in which results shall be within plus or minus.010g% or the known alcohol value. (See Exhibit C).
"E. In the event any repair work is needed, it will be recorded in detail (See Exhibits D & E).
"Repair work will be performed by technicians working for the Applied Technology Section of the Louisiana State Police Crime Laboratory who are certified by the Louisiana Department of Health and Human Resources, Office of Health Services and Environmental Quality, Bureau of Laboratories, to perform such maintenance.
"The Applied Technology Section of Louisiana Police Crime Laboratory shall have the authority to instruct other individuals to perform such maintenance (Exhibit F). Upon satisfactory completion of such training the individual shall be certified to perform maintenance by the Louisiana Department of Health and Human Resources, Office of Health Services and Environmental Quality, Bureau of Laboratories.
"Records covering maintenance, etc., of the P.E.I. (photo-electric intoximeter) instrument will be kept by the Louisiana State Police Crime Laboratory."
Rules and Regulations 6, Louisiana Register, Vol. 3, No. 6 at 273 (1977).