709 So.2d 322 (1998)
STATE of Louisiana
v.
Gerald J. HENRY.
No. 96-KA-1280.
Court of Appeal of Louisiana, Fourth Circuit.
March 11, 1998.
*323 Harry F. Connick, District Attorney of Orleans Parish, Susan Erlanger Talbot, Assistant District Attorney of Orleans Parish, New Orleans, for State.
Archie B. Creech, Orleans Indigent Defender Program, New Orleans, for Defendant.
Before KLEES, BYRNES and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendant was charged with one count of simple burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2. After a trial on March 15, 1995, he was found guilty as charged. The State filed a multiple bill and defendant was adjudicated a fourth felony offender and sentenced to twenty years. It is from this conviction that defendant now appeals.
The defense raises two assignments of error. First, defendant argues that the evidence was insufficient to support his conviction. Second, defendant argues that the trial court erred in finding him to be a fourth offender.

FACTS:
On October 30, 1994, Officer Richard Hunter of the New Orleans Police Department received a call of a residential burglary at 629 Reynes Street in New Orleans. Hunter testified that upon arriving at the scene he was met by Cherie LeSassier who told him that she was watching the residence while her fiance was away. Upon entering, Hunter observed that there was no furniture in the front room and that the residence was in total disarray. LeSassier told him that she had last checked the house on October 27 and at that time everything was fine. Hunter requested that the crime lab check for fingerprints and he was present at the scene when prints were lifted. According to Hunter, there were no witnesses to the incident. The burglary had been committed sometime between 7:00 p.m. on October 27 and 4:00 p.m. on October 30. None of the victim's possessions were located.
Cherie LeSassier testified that she was the victim's girlfriend. She went to the victim's house once or twice per week to check on it. When LeSassier arrived on October 30, the house had been ransacked. There was nothing in the living room except dead fish and gravel from the overturned fish tank. Everything on the walls was gone. In the bedroom, the mattress was pulled off of the box spring and the drawers were pulled out of the dresser. The mirror that had been on the wall was on the floor. The victim had *324 two curio cabinets in the kitchen; one of them was missing. The microwave was also missing from the kitchen. The victim's sheets, towels, and clothes were gone as well. LeSassier testified that she did not give anyone permission to be in the residence, and defendant had never been invited to the residence. LeSassier further testified that she first saw defendant on a bicycle on October 30 while she was waiting for the police to arrive. When the police came, he left. Two days later LeSassier was notified by the police that defendant was the perpetrator. She identified a photograph of defendant as the person she saw on the bicycle.
Roosevelt Thomas, the victim, testified that at the time of the incident he was incarcerated at a federal prison in Alabama. During his confinement, only two people, Cherie LeSassier and Steven Reed, had authorization to be in his residence. Thomas did not know defendant, had never seen him, had never invited him to his house, and had not given him permission to be in the house. Thomas further testified that he alone mounted the mirror from which defendant's prints were taken.
Officer Raymond Loosemore of the Latent Fingerprint Section of the Records and Identification Division of the New Orleans Police Department testified regarding the analysis he performed of the fingerprints recovered from the scene. The crime lab recovered eleven sets of partial prints from the residence, and, of the eleven, five were identifiable. Four of the prints belonged to the victim and one print belonged to the defendant. Loosemore did not take the prints; he knew where the prints had come from through information on the evidence envelope and a police report.
Captain Neal Charles of the Major Crime Investigative Unit of the New Orleans Police Department testified that he conducted a follow-up investigation in this case. Once he received a supplemental report from Officer Loosemore identifying defendant's fingerprint, he spoke to the victim to determine if he knew defendant and if defendant had permission to enter the residence. Based on this information, Charles obtained an arrest warrant. Defendant was charged and found guilty of simple burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2.

ERRORS PATENT:
A review of the record for errors patent reveals one. The trial court did not impose defendant's multiple offender sentence without benefit of probation or suspension of sentence. The error is harmless, however, because the trial court did not grant probation or suspend the sentence in contravention of the statute.

ASSIGNMENT OF ERROR 1:
Defendant avers that the evidence was insufficient to convict him of simple burglary of an inhabited dwelling. It is well established that in reviewing a claim of sufficiency of evidence to support a conviction, a reviewing court must examine the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the appellant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole, and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). In applying this standard, the reviewing court must defer to the credibility choices and justifiable inferences of fact made by the jury. State v. Stowe, 93-2020 (La.4/11/94), 635 So.2d 168; State v. Rosiere, 488 So.2d 965 (La.1986); State v. Foy, 439 So.2d 433 (La.1983). When circumstantial evidence forms the basis of a conviction, the elements must be proven so that every reasonable hypothesis of innocence is excluded. State v. Langford, 483 So.2d 979 (La.1986). La. R.S. 15:438. But, La. R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; it is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985); State v. Heck, 560 So.2d 611 (La.App. 4th Cir.1990), writ den., 566 So.2d 395 (La.1990).
La. R.S. 14:62.2 defines simple burglary of an inhabited dwelling as:

*325 [T]he unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein.
The defendant did not make a confession, nor was any of the victim's property found in the defendant's possession. The only direct evidence linking defendant to the burglary was one partial print found on a mirror in the victim's residence. An unauthorized entry into an inhabited dwelling can be proven beyond a reasonable doubt solely by fingerprint evidence if the State also presents evidence which reasonably excludes the hypothesis that the prints were impressed at a time other than that of the crime. State v. Pryor, 306 So.2d 675 (La.1975); State v. Davenport, 445 So.2d 1190 (La.1984); State v. Cornelius, 539 So.2d 919 (La.App. 4 Cir. 1989). An unlawful entry is only one element of the crime charged in this case, therefore, the other elements must also be present. There was ample evidence presented to show that defendant did not have the consent of the victim to be in the house. Both Cherie LeSassier and Roosevelt Thomas testified that they did not know defendant. LeSassier further testified that she periodically checked the house while Thomas was incarcerated and that she did not authorize defendant to be in the house. Thomas also testified that he did not give defendant permission to be in the house. Also, sufficient evidence was introduced at trial to prove that items had been stolen from the house. Thus, all the elements of the charged crime were present.
Also, inherent in a claim of insufficiency of evidence is the proper chain of custody of the evidence. Notably, no one from the crime lab testified as to the taking of the fingerprint or where the print was located. Officer Hunter and Ms. LeSassier testified that they observed the crime lab dust for prints around the house. Officer Loosemore testified to the statements found in the police report identifying defendant's print as coming from the mirror in the bedroom. The prints he identified bore the same police item number as the incident report filed by Office Hunter. The officer who actually lifted the prints was not called to testify. La. C.E. art. 103 provides in part that error cannot be predicated on a ruling which admits or excludes evidence unless a substantial right is affected and, "... a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection." No objections were made to the testimony of Officer Loosemore or Officer Hunter regarding the taking of fingerprints at the victim's residence.
Rather, the defense argues that the testimony of Officer Loosemore regarding where the print was located was hearsay. Again, the statements from Officer Loosemore were admitted without objection by the defense. The defense's failure to object contemporaneously to any hearsay evidence precludes review of that issue on appeal. La. C.Cr.P. art. 841. Hearsay evidence not objected to constitutes substantive evidence and may be used by the trier of fact; however, this rule is inapplicable if the hearsay evidence is the exclusive evidence of the offense. State v. Lubrano, 563 So.2d 847 (La. 1990); State v. Beach, 610 So.2d 908 (La.App. 1st Cir.1992), writ den. 614 So.2d 1252 (La. 1993) and 94-1942 (La.11/11/94), 644 So.2d 389. Here, the hearsay evidence was not the exclusive evidence of the offense. The victim's residence unquestionably had been burglarized; a mirror from which defendant's fingerprint was lifted had been removed from the wall by the perpetrator; the victim hung the mirror himself; the victim did not know defendant or give defendant permission to enter his residence.
Any rational juror, viewing the evidence in a light most favorable to the prosecution, could have found defendant guilty of burglary of an inhabited dwelling.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 2:
Defendant next argues that the trial court erred in adjudicating him a fourth offender. Specifically, defendant contends that there was insufficient proof of his identity for a 1991 simple escape charge.
To obtain a multiple offender conviction, the State is required to establish both the prior felony conviction and that the defendant *326 is the same person convicted of that felony. State v. Hawthorne, 580 So.2d 1131 (La.App. 4th Cir.1991). Various methods are available to prove that the defendant on trial is the same person convicted of the prior felony offense, such as by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver's license number, sex, race and date of birth. State v. Westbrook, 392 So.2d 1043 (La.1980); State v. Curtis, 338 So.2d 662 (La.1976); State v. Pitre, 532 So.2d 424 (La.App. 1st Cir.1988), writ den. 538 So.2d 590 (La.1989); State v. Savoy, 487 So.2d 485 (La.App. 3rd Cir.1986). The mere fact that the defendant on trial and the person previously convicted have the same name does not constitute sufficient evidence of identity. Curtis, 338 So.2d at 664. In State v. Westbrook, 392 So.2d 1043 (1980), the supreme court found that along with defendant's name, his driver's license number, sex, race, and date of birth were sufficient evidence for the State to carry its burden of proving that this defendant was the same person previously convicted of another felony.
In the instant case, defendant was charged with having prior convictions for simple escape in 1991, possession of stolen property in 1991, and burglary of an inhabited dwelling in 1988. With respect to the possession of stolen property and burglary charges, the State offered arrest registers, along with certified copies of the conviction with fingerprints on the back and the testimony of New Orleans Police Officer Keith Arnold concerning the identification of the fingerprints to prove the identity of defendant. The defense conceded that the State introduced sufficient evidence of defendant's identity for these two convictions. Officer Arnold testified that he was unable to find the arrest register for the 1991 simple escape conviction. The State introduced a certified copy of the conviction in 1991 for simple escape. The certified copy of the conviction bears the same Bureau of Identification Number of defendant, the same physical description, same birth date, and same social security number.
The trial court found that the records were satisfactory to show that defendant had a conviction for simple escape and found that the totality of all information offered proved that defendant is a fourth offender. Based on the supreme court's finding in Westbrook, this assignment of error has no merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.