752 So.2d 211 (1999)
STATE of Louisiana
v.
Leonard PRESTON.
No. 98-KA-0180.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1999.
Opinion Granting Rehearing in part and Denying Rehearing in part February 15, 2000.
*213 Harry Connick, District Attorney, Charles E.F. Heuer, Assistant District Attorney, New Orleans, Louisiana, Attorneys for The State of Louisiana.
Sherry Watters, Louisiana Appellate Project, New Orleans, Louisiana, Attorney for Leonard Preston.
Court composed of Judge WILLIAM H. BYRNES, III, Judge CHARLES R. JONES, and Judge DENNIS R. BAGNERIS, Sr.
JONES, Judge.
By grand jury indictment dated March 20, 1997, defendant/appellant, Leonard Preston, was charged with one count of aggravated rape (Count 1); one count of aggravated kidnapping (Count 2); two counts of aggravated crime against nature (Counts 3 and 7); five counts of armed robbery (Counts 4, 5, 6, 10, and 13); two counts of first degree robbery (Counts 8 and 12); one count of attempted first degree robbery (Count 9); and, one count of aggravated burglary (Count 11). Defendant pleaded not guilty to all counts.
On October 20, 21, and 22, 1997, Preston was tried by a twelve-member jury who rendered the following verdict: (1) not *214 guilty on Counts 1, 2, 7, 8, 12 and 13; (2) guilty of first degree robbery on Counts 5 and 6; (3) guilty of simple robbery on Count 9; (4) guilty of simple burglary on Count 11; and (5) a hung jury on Counts 3, 4, and 10.
On October 31, 1997, after waiving all delays, Preston was sentenced as follows: (1) thirty years at hard labor on Counts 5 and 6; (2) seven years at hard labor on Count 9; and (3) twelve years at hard labor on Count 11. The State filed a multiple bill of information against Preston, and the trial court found Preston to be a third-felony offender. The court set aside Preston's sentence on Count 5 and resentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

FACTS[1]
T.B.[2] testified that at approximately 8:00 p.m. on December 20, 1996, she and her friend, D.M. were walking towards her car in the parking lot behind the her apartment building on Josephine Street when she heard someone running up behind her. She turned around and saw a man with a gun in his left hand running towards her. The man demanded the women's purses and threatened to kill them. T.B. gave him her purse, and D.M., who was on the other side of the car, put her purse on the trunk. The robber took both purses and their jewelry. T.B. testified that as they removed their jewelry, M.M., a neighbor who lived in a carriage house behind the apartment building, yelled from his window. T.B. further testified that her assailant looked to see where the voice was coming from and then fired his gun and ran away. T.B. testified that she identified Preston as the perpetrator at a physical lineup conducted by ther New Orleans Police Department.
M.M. testified that at around 8:00 p.m., he heard screaming. He looked out of the window and observed two women and a man holding what at first appeared to be a knife. M.M. yelled at the man who then looked up, fired his gun in his direction, and ran. M.M. testified that he later identified Preston from a photographic lineup as the man he observed on the night of the shooting.
M.S. testified that on January 23, 1997, at around 6:40 p.m., she was entering into her apartment building at the corner of St. Mary and Prytania when a man approached her and asked her if she knew the person who lived in Apartment B. She testified that she turned around and told him that there was no Apartment B. When the man asked about another apartment, M.S. testified that she began to become suspicious. Nevertheless, as she was walking into her apartment building, the man demanded that she give him her purse. M.S. testified that she went into apartment building and started screaming. Suddenly, the man grabbed her by her throat, swung her around and threw her onto the floor. M.S. identified Preston in a physical lineup as the person who approached on that night.
Ms. B. testified that on December 30, 1996, at approximately 9:10 p.m., she was doing laundry at a friend's apartment building at 1434 St. Andrew when she notice a man's hand reaching into the laundry room and turn off the light. However, she testified that because the light switch was a timer dial, the light could not be turned off. When the man was unable to turn off the light, Ms. B. testified that the man walked into the laundry room and demanded that she give him her money or else he would kill her. She also testified that she attempted to run past the man and call for help when he grabbed her by the throat and threw her onto the stairs. *215 Ms. B. further testified that she felt a metal object under the man's clothing when he got on top of her and started feeling her lower pelvic area. When she began screaming for help, the man ran away. Ms. B. testified that she later identified Preston as her assailant at a physical lineup.
Sergeant Christy Williams testified that she took a statement from Preston in which he admitted being left handed and he confessed to taking the purses of two women on Josephine Street on December 20. Preston also admitted to taking the purse of a woman on January 23 on St. Mary Street.

ERRORS PATENT
A review of the record shows no errors patent.

INSUFFICIENT EVIDENCE
In the first assignment of error, defendant complains that the State failed to present sufficient evidence of his guilt on Counts 6, 9, and 11. He argues that there was insufficient evidence that he committed the first-degree robbery of D.M. because D.M. did not testify at trial. Therefore, he argues that there was no proof that she believed the perpetrator was armed.
As to the conviction for simple robbery, Preston argues that there was no evidence that anything was taken from the victim, Ms. B., and that a verdict for the lesser included offense of attempted simple robbery should have been entered by the jury. With regard to the verdict for simple burglary, Preston argues that the State failed to prove that he entered Ms. B.'s apartment with the intent to commit a theft because Ms. B. testified that her purse was taken outside the apartment building.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir.1989).
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events. Rather, this Court, when evaluating the evidence in the light most favorable to the prosecution, must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012. This is not a separate test from Jackson, but is instead an evidentiary guideline for the jury when considering circumstantial evidence and this test facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984); State v. Addison, 94-2431 (La. App. 4 Cir. 11/30/95), 665 So.2d 1224.
As it relates to the first-degree robbery of D.M., Preston attacks this conviction on two grounds. First, he argues that the State failed to show that D.M. *216 subjectively believed that defendant was armed because Ms. Malone did not testify. Secondly, Preston argues that D.M. did not identify him as the robber.
LSA-R.S. 14:64.1(A) provides that first degree robbery is the taking of anything of value belonging to another or that is in the immediate control of another by the use of force or intimidation when the offender leads the victim to reasonably believe he is armed with a dangerous weapon. In State v. Fortune, 608 So.2d 148, 149 (La.1992), the Supreme Court stated:
The statute [La. R.S. 14:64.1] has objective and subjective components. It requires the state to prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon, and that the victim's belief was objectively reasonable under the circumstances. The statute thus excludes unreasonable panic reactions by the victim but otherwise allows the victim's subjective beliefs to determine whether the offender has committed first-degree robbery or the lesser offense of simple robbery in violation of La. R.S. 14:65. (Citations omitted).
The court further stated that direct testimony by the victim that he believed the defendant was armed or circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the defendant's threats may support a conviction for first degree robbery. Fortune, 608 So.2d at 149.
In Fortune, the Supreme Court vacated the defendant's conviction for first-degree robbery where the defendant approached two women and demanded their jewelry. When one of the victims said, "No" and stepped back, the defendant then lunged at her and took her earrings and a necklace. The other victim testified at trial that she thought the defendant was playing with the victim and that he had one hand underneath his shirt and the other on their chests. The Supreme Court noted that the victim was not asked whether she believed that the defendant was armed and that the other witness treated the encounter as a joke; therefore, the evidence was not sufficient to support the conviction for first-degree robbery. The court further concluded that a rational trier of fact would have had no difficulty finding that the defendant committed the lesser-included offense of simple robbery.
As to whether the State proved that D.M. subjectively believed that Preston was armed with a dangerous weapon, the evidence shows that she, along with T.B., immediately surrendered their property to Preston, unlike the victims in Fortune. Moreover, T.B. and M.M., unlike the victim's friend in Fortune, both testified that they believed that Preston was armed. From this circumstantial evidence, a rational trier of fact could have inferred that D.M. surrendered her purse to Preston under the belief that he was armed with a dangerous weapon. With regard to the issue of identification, both T.B. and M.M. positively identified Preston as the robber. More importantly, Preston confessed to taking the purses of two women on Josephine Street on December 20. Accordingly, the State sufficiently proved that Preston committed first-degree robbery of D.M.
The next conviction that defendant challenges is the conviction for the simple robbery of Ms. B. La. R.S. 14:65(A) provides that simple robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation but not armed with a dangerous weapon. Defendant asserts that the State failed to prove that a "taking" occurred because Ms. B. testified that nothing was taken from her. Thus, Preston argues that the evidence only supports a conviction for attempted simple robbery.
The State concedes that the evidence does not support a conviction for simple robbery even though it was a responsive verdict to the charged offense of attempted first degree robbery. Nevertheless, a *217 jury may return legislatively provided responsive verdict, whether or not evidence supports verdict, so long as evidence was sufficient to support conviction for charged offense absent a contemporaneous objection. See LSA-C.Cr.P. art. 814(C); State v. Myers, 584 So.2d 242 (La. App. 5 Cir.1991), writ denied 588 So.2d 105 (La.1991), cert denied, 504 U.S. 912, 112 S.Ct. 1945, 118 L.Ed 2d 550 (1992). (Emphasis added). Therefore, we hereby vacated Preston's conviction and sentence for simple robbery, enter a verdict for attempted simple robbery, and remand the case to the trial court for resentencing. See LSA-C.Cr.P. art. 821(E).
Lastly, Preston complains that the State failed to prove that he committed simple burglary. La. R.S. 14:62 provides that simple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure with the intent to commit a felony or theft therein. Preston argues that the State failed to prove that he entered M.S.'s apartment with the intent to commit a theft. Further, he argues that the State did not produce any evidence to show that any part of his body was inside M.S.'s apartment building when her purse was taken.
In State v. Falls, 508 So.2d 1021 (La. App. 5 Cir.1987), the Fifth Circuit stated that entry occurred whenever any part of the defendant's person passed the line of the threshold. See also State in Interest of R.E.B., 26,468 (La.App. 2 Cir. 9/21/94), 643 So.2d 287. In the instant case, M.S. testified that after Preston took her purse, the door opened to her apartment building, and she started screaming for help after she made her way inside. She further testified, "[A]ll of a sudden he was there in the apartment, in the doorway, and was like taking me by the throat ...." Additionally, M.S. testified that Preston hit her in the throat, swung her around, and caused her to fall to the floor before he ran out.
On cross-examination, M.S. testified that Preston came in after he had taken the purse. Considering this testimony, we find that the State has proven that Preston did in fact enter her apartment on the night in question. Though we find that the actual theft occurred outside the apartment building, the grand jury indictment states that the basis for the aggravated burglary charge was not that a theft was committed in the building, but that he committed a battery upon M.S.[3]
In the case sub judice, Preston pursued M.S. into the apartment building where he took her by the throat and threw her to the ground. When M.S. testified to Preston choking or strangling her, the State satisfied its burden by proving that Preston entered the building with the intent to commit a felony, namely second-degree battery.[4] Accordingly, this argument is without merit.

HABITUAL OFFENDER STAUTS
In this assignment of error, Preston complains that the trial court erred in finding him to be a third-felony offender. He argues that the evidence presented by the State proved that he was a second-felony offender, at best.
The basis for the multiple bill of information was a 1991 guilty plea to possession of stolen property (Case No. 349-257) and a 1990 guilty plea to simple burglary (Case No. 343-736). At the multiple bill hearing, the State presented the testimony of Officer Lawrence James as an expert in fingerprint *218 identification. Officer James testified that Preston's fingerprints, which he took the morning of the hearing, matched those on State's Exhibit # 2, an arrest register from March 26, 1991, and the fingerprints matched those on State's Exhibit # 3, the back of the bill of information in Case No. 349-257. He further testified that Preston's fingerprints matched those on State's Exhibit # 4, an arrest register dated May 1, 1990. Both arrest registers listed the arrestee's name as Leonard Preston, his Bureau of Identification number as 309909, his date of birth as July 7, 1970, and his address as 1827 Annunciation. State's Exhibit # 5, the bill of information from Case No. 343-736, did not have fingerprints on the reverse side.
The first issue that must be resolved is whether the defendant has preserved this issue for appellate review. In State v. Cossee, 95-2218 (La.App. 4 Cir. 7/24/96), 678 So.2d 72, this Court held that the failure to file a written response to the multiple bill as required by La. R.S. 15:529.1(D)(1)(b) precluded appellate review of the defendant's claim that the documentary evidence was not sufficient to support one of the prior convictions set forth in the multiple bill.
When the record does not contain the defendant's written response to the multiple bill, the issue will not be preserved for appellate review unless the objection is made orally. State v. Anderson, 97-2587 (La.App. 4 Cir. 11/18/98), 728 So.2d 14. At the multiple bill hearing, defense counsel focused on the issue of the fingerprint evidence and the lack of certification under La.C.Cr.P. art. 871. Thus, we conclude that defense counsel did preserve the identity issue for appellate review, as this is the basis for defendant's argument before this Court. Accordingly, the merits of this issue will be discussed.
Preston does not specify which of the two prior convictions the State failed to establish the identity element. However, since there were no fingerprints on the reverse of the bill of information in Case No. 343-736, we assume that this conviction is the one in which Preston argues provided the improper predicate for his sentence as a habitual offender.
Preston argues that the fingerprints on the arrest register are insufficient to prove that he was the same person previously convicted because those fingerprints only show that he was arrested and because there was a lack of certification of the fingerprints as required by La.C.Cr.P. art. 871.
LSA-R.S. 15:529.1(D)(1)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof. The State must establish the prior felony and that the defendant was the same person convicted of that felony. State v. Neville, 96-0137 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, writ denied 97-1637 (La.12/12/97), 704 So.2d 1180. There are various methods available to prove that the defendant is the same person convicted of the prior felony offense, such as testimony from witnesses, expert opinion regarding the fingerprints of the defendant when compared with those in the prior record, or photographs in the duly authenticated record. State v. Henry, 96-1280 (La.App. 4 Cir. 3/11/98), 709 So.2d 322. The mere fact that the defendant and the person previously convicted have the same name does not constitute sufficient evidence of identity. Id.
LSA-C.Cr.P. art. 871(B)(1)(a) provides that in every judgment of guilty of a felony, the sheriff shall cause to be affixed to the bill of indictment or information the fingerprints of the defendant against whom such judgment is rendered. Section B(1)(b)(i) provides that a certificate shall be appended beneath the fingerprints to the effect that the fingerprints on the bill are the fingerprints of the defendant. Section C of Article 871 provides that the *219 certificate shall be admissible in evidence as prima facie evidence that the fingerprints appearing thereon are the fingerprints of the defendant against whom the judgment of guilty of a felony was rendered.
In State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, the Fifth Circuit held that testimony comparing a defendant's current fingerprints with fingerprints found on prior arrest records was sufficient to prove that the defendant was the person convicted of the prior offense. The reviewing court did not find that the certification requirement of Article 871 was pertinent to fingerprints on arrest registers.
Since Article 871 refers to bills of indictment or information and not other documents, the certification requirement is not applicable to arrest registers; moreover, Article 871 does not appear to prohibit the use of fingerprints obtained from arrest registers at multiple bill hearings as Preston asserts. Section C states that the certificate required by the article is prima facie evidence that the fingerprints are those of the defendant; but, the certification is not the only method by which the State can prove the identity of the defendant at a multiple bill hearing.
The arrest register at issue does contain a certificate that states that it is a true and correct copy of the original document on file in the record room of the New Orleans Police Department, and the certificate was signed by the custodian of records for the police department. Thus, the 1990 arrest register could be used as evidence at Preston's multiple bill hearing although that document in and of itself is insufficient proof of identity as to the 1990 conviction.
The arrest register states that Preston was arrested on May 1, 1990, for burglary and possession of stolen property and it also gives the victim's name. The bill of information charged Preston with simple burglary of an automobile belonging to Sergeant Ignatius Willoz on May 1, 1990; and it reflects that Preston pleaded guilty to this charge on September 12, 1990. Additionally, the arrest register for this offense and the one for the 1991 conviction have the same name, birth date, address, and Bureau of Identification number. Considering the evidence presented, the trial court correctly found Preston to be a third-felony offender. Therefore, this assignment of error is without merit.

MOTION TO VACATE
Along with appellate counsel's brief, Preston also submitted a pro se brief to this Court outlining several assignments of error. Though appellate counsel raised assignments of error related to Preston's conviction under Counts 6, 9, and 11, it appears that Preston was raising all possible errors that may exist in the record, including errors related to Count 5. Preston was resentenced under the multiple bill to serve life imprisonment at hard labor without benefit of parole, probation or suspension of sentence, pursuant to conviction under Count 5. Therefore, this Court issued an order to appellate counsel to outline all appealable issues that may exist in the record or we would consider those issues as having been abandoned. See Uniform RulesCourts of Appeal, Rule 2-12.4. We further ordered appellate counsel to consider any errors related to Preston's conviction under Count 5, which carried a mandatory life sentence.
In response to our order, appellate counsel filed a Motion to Vacate Order with an attached memorandum. In her memorandum, appellate counsel certified to this Court that she has briefed all appealable issues in her original brief. She further certified to this Court that the only appealable issue related to Count 5 was the identity issue in the multiple bill hearing which we have addressed above. Further, she requested that we vacate our order in light of the fact that the issues that were briefed were the only issues that had merit. Additionally, Preston filed a Motion to Dismiss the Motion to Vacate Order, arguing *220 that his appellate counsel was ineffective since she failed to outline any additional errors in the record.
In light of the appellate counsel's certification, we grant the Motion to Vacate Order, and deny the defendant's Motion to Dismiss Motion to Vacate Order.

DECREE
For the foregoing reasons, the defendant's convictions and sentences for first degree robbery (Counts 5 and 6) and for simple burglary (Count 11) are hereby affirmed. We also vacated the defendant's conviction and sentence for simple robbery under Count 9, and enter a verdict for attempted simple robbery. Further, we remand this matter to the trial court for resentencing on Count 9. Finally, we grant appellate counsel's Motion to Vacate Order and deny Leonard Preston's Motion to Dismiss Motion to Vacate Order.
AFFIRMED IN PART; REVERSED IN PART; VACATED AND REMANDED; MOTION TO VACATE ORDER GRANTED; AND MOTION TO DISMISS MOTION TO VACATE ORDER DENIED.

ON APPLICATIONS FOR REHEARING
We grant the applications for rehearing filed by the defendant and his appellate counsel for the sole purpose of addressing those issued that were not discussed in our original decree rendered on November 10, 1999.[1]
In the defendant's pro se application for rehearing, he argues that the lunacy hearing conducted on July 8, 1997 was tainted because the hearing was not "complete, fair or effective." More specifically, he argues that only one physician testified at the lunacy hearing, and this physician's testimony, without more, was not sufficient to prove his competency. Thus, he argues that the trial court deprived him of his due process rights. Additionally, the defendant argues that his trial counsel did not cross-examine the physician regarding the merits of the lunacy report prior to the trial court's judgment finding him competent to stand trial.
According to the lunacy hearing transcript, defense counsel stipulated that Dr. Rafael Salcedo was an expert in the area of forensic psychology. Trial counsel also stipulated to the fact that Dr. Salcedo's report was consistent with the findings of his colleague, Dr. Kenneth A. Ritter, who also examined the defendant. Moreover, after being questioned by the State and defense counsel, Dr. Salcedo testified that the defendant understood the nature of the charges against him and was able to assist his counsel in preparing his defense. See LSA-C.Cr.P. art. 648; see also State v. Silva, 96-0407 (La.App. 4 Cir. 9/3/97), 699 So.2d 487, 490, writ denied 97-2578 (La.1/30/98), 709 So.2d 704. Hence, this assignment of error is without merit.
Secondly, the defendant argues that the trial court erred in failing to sever the multiple felony charge against him prior to commencing trail. He also argues that his confession should have been suppressed.
The defendant is not entitled to a severance as a matter of right, but the decision is within the sound discretion of the trial court, based upon the facts of the case. See LSA-C.Cr.P. art. 704; see also State v. Burton, 96-1248 (La.App. 4 Cir. 12/9/98), 727 So.2d 518, writ denied 99-0037 (La. 4/30/99), 741 So.2d 11. As it relates to the defendant's confession, the record indicates that the confession made to Sergeant Christy Williams was voluntary, and without duress, intimidation, threats or promises. See State v. Johnson, 97-1701 (La.App. 4 Cir. 5/27/98), 716 So.2d 403. This assignment of error is also without merit.
Finally, the defendant argues that his trial counsel was ineffective and unprofessional *221 based upon his trial technique and based upon the statement he made in court that he did not have adequate time to prepare for the defendant's trial. The defendant also argues that trial counsel failed to keep him "abreast" of the events prior to trial and that the pleadings which were filed on his behalf were defective because trial counsel did not cite any case law in the pleadings.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La. 1984). Because the defendant failed to identify how he was prejudiced by the trial counsel's performance at trial we pretermit any discussion on the merits of his claim of ineffective assistance of counsel.
In other respects, the applications for rehearing are denied.
NOTES
[1] This statement of facts will concern itself only with the four counts of which defendant was found guilty and not the other counts for which he was tried at the same time.
[2] The names of the victims have been deleted and replaced with their initials in order to protect their identity.
[3] La. R.S. 14:60 defines aggravated burglary, in part, as the unauthorized entering of any inhabited dwelling with the intent to commit any felony or theft therein if the offender commits a battery upon any person while in such place, or in entering or leaving such place.
[4] Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury. Serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain, protracted and obvious disfigurement, protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
[1] The Application for rehearing filed by appellate counsel merely urges this Court to consider the arguments in the defendant's pro se application for rehearing.