EDWIN A. LOMBARD, Judge.
|, The defendant appeals his conviction for two counts of rape and his adjudication as a third felony offender. After review of the record in light of the arguments of the parties and applicable law, we affirm the defendant’s conviction on two counts of rape and his adjudication of a third felony offender. An error patent review reveals *763 that the district court failed to rule on the defendant’s motion to reconsider sentence and, accordingly, we remand the matter for a ruling on that motion.

Relevant Facts and Procedural History

On the evening of March 18, 2008, Jonathan Wang was in bed when he heard someone crying, yelling, and beating on his back door. Opening his door, he found his neighbor with torn clothes and a battered face and neck. She told him that she had been raped and needed help. Accordingly, he called 911 and his mother stayed outside with the victim until the police arrived.[1]
On July 28, 2008, Philip L. Fortune, an electrical contractor, was charged by a bill of information with three counts of forcible rape and one count of second degree kidnapping. In August 2009, he was tried on the rape counts and, after a | gtwo-day trial, found guilty on two counts. After waiving delays, the defendant was sentenced to serve concurrent twenty years sentences at hard labor. After the State filed a multiple bill, however, the defendant was adjudicated a third felony offender and the previous sentences were vacated. Pursuant to La.Rev.Stat. 15:529.1, the defendant was sentenced as a third offender to concurrent thirty year sentences at hard labor.

Discussion

The defendant challenges the sufficiency of the evidence supporting his conviction on two counts of rape and as third felony offender. At trial, the State presented the testimony of Mr. Wang, the victim, the police officer who responded to the 911 call, and the nurse who examined the victim immediately after the incident. The defendant testified on his own behalf and presented two friends as witnesses.
The following evidence was adduced at trial. The rape occurred on March 18, 2008. The defendant, an electrical subcontractor, worked on a house across the street from the victim’s residence. The defendant and the victim met at some point prior to March 18, 2008, and the extent of that relationship is disputed. On March 18, 2008, the defendant knocked on the victim’s door and she invited him inside. According to the victim, the defendant came up behind her while she was standing by the kitchen sink and wrapped an electrical cord around her neck. He forced her to consume crack cocaine, began strangling her, and shoved her into the dining room and onto the floor. During the struggle, the dining room table fell over. The defendant began beating the victim while continuing to strangle her; she stated that she could hardly breathe. When she attempted to grab at his left eye, the defendant struck her in the face and told her that he was going to kill her. He then forced her |ointo the bedroom and tried to remove her clothing while continuing to beat and strangle her. In an attempt to stop him from beating her, the victim agreed to remove the rest of her clothing. The defendant then repeatedly had oral, vaginal, and anal sex with her using lotion found in her room. She also stated that the defendant beat her with an extension cord on her legs because she did not participate during the sex. After he was done, the defendant instructed her to get dressed and they went back into the kitchen. At that point, the victim made her escape, running to her neighbor’s house.
Detective Neely of the New Orleans Police Department (NOPD) interviewed the victim at the scene, observing ligature marks on her neck, the overturned dining *764 room table, and the bedroom in complete disarray with sheets covered in a brown material that was either fecal matter or blood, and a an electrical cord and lotion on the bed. He found drug paraphernalia (two glass pipes inside a black pouch) on the kitchen table. The victim was distraught as she recounted the details of the incident, periodically crying uncontrollably. She informed the officer of the defendant’s name and that he had only one leg. She told him that she had not used drugs since having brain surgery in 1997 and that the drug paraphernalia belonged to the defendant. She told the detective that the defendant never lived in her house. The detective subsequently presented the victim with a photographic lineup, and she chose the defendant.
Sheri Pellagalle, a specialist in sexual assault examination, testified that she examined the victim at the hospital. Both parties stipulated that Ms. Pellagalle was an expert in forensic nursing. According to Ms. Pellagalle, the victim was visibly upset during the interview and examination. The examination revealed that she had abrasions to her shoulder, a whip mark on her leg, strangulation marks on her |4neck, and bruising to her left eye with swelling. Fecal matter was found inside her vagina, verifying her story that the defendant went back and forth between her vagina and rectum. The victim had tears in the skin between her vagina and rectum and there were multiple tears on her rectum. Ms. Pellagalle testified that in her opinion, the victim had been raped. The victim also tested positive for cocaine.
The defendant verified that he is an electrician and home builder and that he lost his leg in April of 2001. He explained that because he uses a prosthetic leg, he is unable to do any heavy lifting and cannot drive and therefore usually works in a supervisory capacity and is driven to and from jobs by Juan Matthews and Jimmie Walters. He met the victim when he was working at a job across the street from her house and the following Sunday, they had dinner together and afterwards they had sex. According to the defendant, he subsequently moved in with her and lived there for three months. The defendant stated that he frequently gave the victim money, a fact that she denied during her testimony, and that the relationship ended on March 17, 2008, the day before the rape, when he discovered that she was doing drugs again. The defendant stated that he stopped using drugs approximately five months before he met the victim and denied raping or beating the victim. He did admit to prior convictions.
Jimmie Walters testified that he owns a construction company and that he often subcontracted electrical work to the defendant, whom he has known for fifteen years. He stated that for approximately three months, he would often pick the defendant up from the victim’s house and drive him to and from jobs. Mr. Walters indicated that the victim frequently called the defendant while he was working. One day, the defendant stopped going to the victim’s house. Mr. Walters admitted having prior convictions.
|fiJuan Matthews was the last to testify, also admitting to prior convictions. He stated that he has known the defendant for at least eighteen years and that the defendant was dating the victim. Mr. Matthews stated that although he often gave the defendant rides, the defendant had no trouble driving and often borrowed his truck. Mr. Matthews also stated that appellant was using cocaine during his relationship with the victim.

Assignment of Error 1

By his first assignment of error, the defendant argues that the evidence is *765 insufficient to support his convictions for the forcible rape of the victim because the evidence presented at trial does not prove he was the perpetrator of the offense. Specifically, the defendant argues that the evidence is insufficient because the victim failed to tell Detective Neely that she was on crack when he arrived on the scene and that, contrary to the victim’s testimony, he lived with her for three months prior to the incident, as corroborated by the testimony of his friends. He also points to the absence of physical evidence (fingerprints or DNA) connecting him to the crime.
La.Rev.Stat. 14:42.1 A(2) provides in pertinent part that forcible rape is “anal, oral, or vaginal sexual intercourse” ... “deemed to be without the lawful consent of the victim” “[w]hen the victim is incapable of resisting or of understanding the nature of the act by reason of stupor or abnormal condition of the mind produced by a narcotic or anesthetic agent or other controlled dangerous substance administered by the offender and without the knowledge of the victim.” We review the sufficiency of the evidence to support a conviction under the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560(1979). State v. Brown, 2003-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18. Accordingly, we “must | ^determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” Id. (citations omitted). When circumstantial evidence is used to prove the commission of the offense, La.Rev.Stat. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Id. (citation omitted).
In this case, although the defendant seeks to undermine the credibility of the victim’s testimony and provided witnesses who corroborated his own version of events, the testimony of the victim alone is sufficient to establish the elements of the offense of forcible rape, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. See State v. Lewis, 97-2854 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004, 1023; State v. Carter, 97-1096 (La.App. 4 Cir. 5/20/98), 713 So.2d 796. In addition, a factfinder’s credibility decision will not be disturbed unless it is clearly contrary to the evidence. See State v. Huckabay, 2000-1082 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093; State v. Harris, 99-3147 (La.App. 4 Cir. 5/31/00), 765 So.2d 432.
The examining nurse, Ms. Pellagalle, testified in detail as to the injuries sustained by the victim during the sexual attack, including injuries to her face, neck, shoulder, leg, genitalia, and anus. Although the versions of the incident testified to by Detective Neely and Ms. Pel-lagalle as to what the victim told them differed a little from her testimony, all three testimonies established that the victim was strangled and beaten during the rapes. Ms. Pellagalle testified that the victim told her the defendant shoved something down her throat. Although the victim’s |7testimony differed somewhat from what she told the detective and Ms. Pellagalle, these differences are not so great as to render her testimony incredible. Moreover, the defendant’s credibility is clearly questionable based upon the testimony of his own witness, Juan Matthews, contradicting the defendant’s assertions that he no longer used drugs and could not drive. Also, the veracity of Matthews and Walters was undermined by the fact that they were the defendant’s *766 long term friends and had questionable pasts.
The jury was aware of the lack of physical evidence against the defendant and the differences in the testimony of the witnesses but found the victim’s testimony credible. The jury’s finding is not contrary to the evidence. Accordingly, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence for the jury to find beyond a reasonable doubt that the appellant forcibly raped the victim. This assignment of error is without merit.

Assignment of Error 2

By his second assignment of error, the defendant argues that the trial court abused its discretion in overruling defense counsel’s objection to the State’s improper remark during its rebuttal argument and in failing to admonish the jury to disregard the remark.
During the prosecutor’s rebuttal, the following colloquy occurred:
By Ms. Cannizzaro: If the defense thought the DNA would test anybody other than the defendant, why didn’t they test it themselves?
By Mr. Duffy: Objection, Judge. It’s not our burden to prove the case. It’s the State’s burden to prove the case.
By Ms. Cannizzaro: Your honor, the Defense presented a case.
By the Court: It’s argument. I’ll note your objection for the record. Overruled.
| RLa.Code Crim. Proc. art. 774 provides that (1) the scope of closing argument “shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case;” (2) the argument “shall not appeal to prejudice; and (3) the state’s rebuttal shall be confined to answering the argument of the defendant.” Although prosecutors have wide latitude in framing the closing argument, they “may not resort to personal experience or turn argument into a plebiscite on crime.” State v. Clark, 2001-2087, p. 15 (La.App. 4 Cir. 9/25/02), 828 So.2d 1173, 1183 (citations omitted). The trial judge has broad discretion in controlling the scope of closing arguments and even if the prosecutor exceeds the bounds of proper argument, this court may not reverse a conviction unless “thoroughly convinced” that the argument influenced the jury and contributed to the verdict. Id. (citations omitted). Moreover, “even where the prosecutor’s statements are improper, credit should be accorded to the good sense and fairmindedness of the jurors who have heard the evidence.” Id. (citations omitted).
In this case, defense counsel emphasized throughout the trial that no DNA testing was performed on either the rape kit or other substances found at the scene of the crime. This was particularly true during the cross-examination of Detective Neely and Ms. Pellagalle. These same issues were argued by counsel at the end of trial. Accordingly, although the State’s comment questioning why the defense never tested for DNA was improper, we find the error to be harmless. Because the jury was privy to the lack of any DNA evidence and in light of the victim’s testimony, consistent with what she told the police, nurse examiner, and her neighbor, as well as her unquestionable identification of appellant, it does not |9appear that the prosecutor’s comment influenced or contributed to the jury’s verdict. Accordingly, this assignment of error is without merit.

Supplemental Assignment of Error

By this assignment of error, the defendant asserts that the evidence presented at the multiple offender hearing *767 was insufficient to prove that he was a third offender.
In the multiple bill of information, the State charged appellant as a third felony offender based upon his 2003 guilty plea to three counts of forgery in ease number 424-518 A, and his 1994 guilty plea to unauthorized entry into an inhabited dwelling in case number 371-986 J. He specifically argues that the state failed to prove his identity as the person convicted of forgery in case number 424-518 A and that the state failed to prove that his guilty plea was knowingly and voluntarily made in case number 372-986 J. With respect to the identity, appellant points out that the certified package of documents from case number 424-518 A contained no fingerprints and that the state’s attempt to prove his identity by using a fingerprint card made at the time he was booked on unrelated charges was insufficient.
To obtain an adjudication as a multiple offender, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. State v. Henry, 96-1280 p. 7 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, 325 (citations omitted). The defendant’s identity as the same person convicted of the prior felony offense may be proved by testimony of witnesses, expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, photographs contained in a duly authenticated record, or evidence of identical driver’s license number, sex, race and | indate of birth. Id. (citation omitted). The fact that defendant on trial and the person previously convicted have the same name does not constitute sufficient evidence of identity. See State v. Westbrook, 392 So.2d 1043 (1980) (in addition to defendant’s name, other evidence such as driver’s license number, sex, race, and date of birth should be introduced to sustain State’s burden of proving that defendant is same person previously convicted of another felony); see also State v. Cosey, 2004-2220 (La.App. 4 Cir. 7/13/05), 913 So.2d 150 (matching a defendant’s fingerprints to an arrest register which then was matched to other documents concerning the prior offense found sufficient to establish identity).
In this case, the following evidence was introduced in support of the charge that the defendant was the same person previously convicted of forgery in 2003: his fingerprints taken in court on the day of the multiple bill hearing; a certified copy of a fingerprint card taken at the time of his booking for aggravated burglary; and a certified package of documents from case number 424-518 A. Though the certified package of documents contained no fingerprints, the expert, Officer Jackson, explained that at the time the defendant was being booked for aggravated burglary, it was learned that he had outstanding warrants for forgery. He further testified that both charges were included under the same folder number and that only one fingerprint card was made for the two charges. These exhibits were also linked together by name, social security number, and state identification number. Accordingly, the arrest register containing the prints matching those of the defendant was linked by the expert to the court documents from the prior conviction and the State adequately proved the defendant’s identity as the person who pleaded guilty to forgery in 2003.
|nWith respect to whether the defendant’s guilty plea was knowingly and voluntarily made in case number 372-986 J, he points out that the documentation presented by the State fails to show that he was personally addressed by the court concerning the rights that he was waiving.
*768 The Louisiana Supreme Court set forth the burdens of proof in multiple bill proceedings State v. Shelton, 621 So.2d 769, 779-780 (La.1993) as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea, [footnote omitted] If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a “perfect” transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a “perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin v. Alabama, [395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)] rights.
Here, with respect to the defendant’s 1994 guilty plea, the State introduced the bill of information which contained fingerprints on the back, the docket master, and the plea of guilty waiver of rights form. The docket master entry of the guilty plea and the plea form both indicate that the defendant was present and represented by counsel when he pleaded guilty. Thus, the State met its initial burden under | ^Shelton. Moreover, although the docket master entry does not list the rights to which the trial court advised appellant pri- or to taking his plea, the plea form fully delineates the rights that he was waiving by pleading guilty, including his Boykin rights. The defense offered nothing to refute the State’s evidence. Thus, the State adequately proved that the defendant’s 1994 guilty plea was voluntarily and knowingly given. This claim has no merit.

Errors Patent

A review of the record for errors patent reveals that the district court failed to restrict parole eligibility on at least two years of the defendant’s sentence as required by La.Rev.Stat. 14:42.1. As such, the sentence is illegally lenient. However, pursuant to La.Rev.Stat. 15:301.1 A and State v. Williams, 2000-1725 (La.11/28/01), 800 So.2d 790, the sentence is deemed to have been imposed with these restrictions of benefits, even in the absence of the trial court’s failure to delineate them. Thus, there is no need for this court to correct the sentence.
However, the record also shows that a motion to reconsider sentence was filed on August 28, 2009, but was never ruled upon by the district court. This is clear error. However, because the defendant does not seek review of his sentence, review of his conviction is not precluded by the district court’s failure to rule on the motion. See State v. Hailey, 2002-1738 (La.App. 4 Cir. 9/17/03), 863 So.2d 564; State v. Foster, 2002-0256, p. 3 (La.App. 4 Cir. 9/11/02), 828 So.2d 72, 74 (expressly declining to follow State v. Roberts, 2001-0283 (La.App. 4 Cir. 1/23/02), 807 So.2d 1072, where this Court stated that without a final sentence a conviction is not appeal- *769 able); see also State v. Ferrand, 2003-1746 (La.App. 4 Cir. 1/14/04), 866 So.2d 322 (conviction affirmed, remanded for ruling on motion to reconsider); State v. Davis, 2000-0275 (La.App. 4 Cir. 2/14/01), 781 So.2d 633 (conviction affirmed, remanded for ruling on motion to reconsider); State v. Allen, 99-2579 (La.App. 4 Cir. 1/24/01), 781 So.2d 88 (conviction affirmed, remanded for ruling on motion to reconsider). Accordingly, we remand this matter only for a ruling on the motion to reconsider sentence.

Conclusion

We affirm the defendant’s conviction on two counts of rape, as well as his adjudication as a third felony offender, but remand the matter back to the district court for a ruling on the defendant’s motion to reconsider sentence.
CONVICTION AFFIRMED; ADJUDICATION AFFIRMED; REMANDED.

. A 911 call was played for the jury. Officer Roussell with the Communications Division of the police department verified the authenticity of the 911 tape.