1EDWIN A. LOMBARD, Judge.
This appeal concerns only the sentencing of the defendant, Orenthal T. Allen, who was charged with aggravated rape of a child under the age of twelve. On November 3, 1998, the State amended the indictment to a charge of aggravated sexual battery, and Allen entered a guilty plea to the amended charge under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
A pre-sentencing hearing occurred on April 20, 1999, and on May 19, 1999, Allen was sentenced to serve fifteen years at hard labor without the benefit of probation, parole, or suspension of sentence; the term is to run consecutively with other sentences Allen is presently serving. Defense counsel objected and a motion to reconsider sentence was filed, but was never ruled upon. Allen appealed, and this court affirmed his conviction for aggravated sexual battery but remanded the case to the trial court for consideration of the motion to reconsider the sentence. State v. Allen, 99-2579 (La.App. 4 Cir. 1/24/01), 781 So.2d 88.
At a hearing on March 14, 2001, the motion for reconsideration of sentence was denied. The defendant was granted an appeal of his sentence.
The facts of the case as presented in that earlier appeal are as follows:
Because Mr. Allen entered a guilty plea, there is no trial transcript in this case. The transcript of the guilty plea reflects that the [ 2assistant district attorney gave a brief statement of what evidence the State would have presented had the case gone to trial. According to the State, the victim W.H.[1] would testify that between August 17 and October 22, 1996, at her grandmother’s home in Empire, Mr. Allen “forced himself upon her, by either inserting his penis into her vaginal area or on the surface of it and forcing her and holding her down and forcing her and threatening her not to talk.” The State also would have presented a videotaped statement from the victim and supporting witnesses, specifically Tina Lafrance. The State also averred that the victim had undergone extensive therapy for the mental trauma caused by the defendant’s actions.
In addition to the factual basis for the plea that was provided by the State, the record contains copies of the pretrial hearing transcripts. On February 10, 1998, Detective Mary McClendon of the Plaquemines Parish Sheriffs Office testified that she became involved in the investigation of Mr. Allen just before the holidays in 1996 when family services contacted the sheriffs department and forwarded a copy of medical reports on the victim. Detective McClendon subsequently interviewed W.H.; the child told the detective that “her sister’s boyfriend, Little Bit, had put his birdie in her private.” W.H. also told the detective that her brother Davey had done the same thing. Detective McClendon also conducted a video interview with W.H., during which W.H. was given anatomical dolls. She pulled the pants down on the male doll and the female doll, then put the male doll on top of the female, placed the doll’s penis inside the private area of the female, and stated that “this is what they did to me.” At the time, W.H. was seven years of age, and it was based on her age that the detective determined that the incident occurred between August 17 and October 22, 1996, the latter date being the date W.H. was removed from her family’s residence. Detective McClendon *1032 further testified that Mr. Allen made no statements and no physical evidence was seized from him. Although the victim could not provide any name for Mr. Allen except Little Bit, Detective McClen-don was able to confirm that Mr. Allen, who was the boyfriend of the victim’s sister and the father of at least one of her children, was known by that nickname.
The State also called Patricia Jackson, an investigator with child protection services. She testified that her investigation began in September 18, 1996 when her office received a call that the victim had been sexually abused and was wearing a pair of underwear with blood in them. Ms. Jackson spoke with both W.H. and her mother. W.H.’s mother apparently confirmed that her daughter had been wearing a pair of underwear containing a discharge, but “she didn’t know if they were her underwear, if it was actually for the child and she didn’t know if the underwear were dirty when the child put them on or if they were clean.” Ms. Jackson was not able to recover the ^underwear. She referred W.H. to Children’s Hospital for an evaluation, which was conducted on October 22, 1996 by Dr. Scott Benton. Dr. Benton reported to Ms. Jackson that, based on his interview with W.H., he believed she had been raped. A copy of Dr. Benton’s written report was filed into the record with the State’s discovery answers. W.H. later spoke with Ms. Jackson and related that her brother had “touched her private,” but never related that Mr. Allen had done so.
Robin Penegal of the Office of Community Service testified that she became the case manager for W.H. after she was placed in foster care. Ms. Penegal and W.H. spoke about nightmares that W.H. was experiencing. Ms. Penegal also received reports from the sexual abuse therapy group to which the victim had been referred. The reports indicated that during group sessions, W.H. identified her sister’s boyfriend and her brother as the perpetrators.
On April 14, 1998, W.H. was called as a witness. She testified that she was eight years old and lived in Harvey. When asked why she was living there, she stated it was because she had been abused. She stated that her social worker Ms. Robinson [Robin Penegal] told her she had been abused. W.H. further testified that she used to five with her mother, her grandmother, her older brother Davey, her cousin Kursha, and her little brother Christopher. Her “paw-paw” Lenny also lived with them. W.H. identified Mr. Allen as Orenthal, who used to be her sister Rolita’s boyfriend. According to W.H., her sister was twenty-one and used to live with her also. W.H. was unable to recall how often Mr. Allen visited her sister Rolita or how long he would stay; however, she stated that she could not recall him spending the night. W.H. stated that she shared a room with her grandmother and that her brother slept on the floor, but did not know in which room her brother slept. During the hearing, W.H. was unable to give any other testimony regarding her interactions with Mr. Allen; she denied “ever doing anything with him” or being alone with him. According to W.H., her grandmother and paw-paw were always with them. In further questioning, W.H. gave no responses to questions about what Mr. Allen did that she thought was not right and ultimately indicated that she could not talk about it. During a recess, the court noted for the record “that the witness became emotional, cried and could not talk about the incident or ap *1033 peared not to be able to talk about the incident.”
After the recess, the defense called the victim’s brother Davey to testify. He stated that he was fifteen and had been living with his father in Lafayette for approximately a year and a half; he formerly lived with his mother and her children. He denied that his grandparents lived with them. He further testified that his sister Rolita lived with another sister, Mia. Davey identified Mr. Allen as Rolita’s fiancé and the father of her two children. He further testified that Mr. Allen did not visit at his mother’s house. Davey denied ever seeing Mr. Allen touch W.H. He admitted that he knew W.H. had accused him of sexually abusing her and that her accusation included the ^allegation that he and Mr. Allen had abused her in the same room at the same time. He denied that any such abuse ever occurred. According to Davey, the accusations against Mr. Allen began because in 1996 Davey’s mother had asked Mr. Allen to obtain drugs for her. When he refused, she threatened him that he was “gonna be sorry.” Da-vey also testified that he had known W.H. to he; on one occasion she had told their mother that her cousin Tashon had touched her and had sex with her. Davey contradicted his earlier testimony and stated that Mr. Allen did come to their trailer on occasion, but would only stay for about 20 minutes. The incident wherein his mother asked Mr. Alien to get drugs for her took place in their trailer.
On May 12, 1998, the victim was again called to testify, but this time Ms. Robin Penegal accompanied her, and sat beside her during questioning. The defense objected, but the trial court permitted it because it was only a preliminary proceeding at which no jury was present. W.H. repeated her testimony regarding her living arrangements with her mother, grandparents, brothers, sister Rolita, and cousin Kursha. W.H. initially could not recall Mr. Allen ever visiting at her house. She also stated that she was “never around him” but then testified that she would talk to him “by her grandma.” W.H. also gave a negative answer to the question of whether Mr. Allen had ever touched, hugged, or kissed her. When asked if she could “think of anything he ever did to you,” W.H. replied “No.” In further questioning, W.H. admitted that she knew “what men and women do with each other;” but when asked if she had ever done anything like that with “Little Bit,” she did not respond. At that point, the court interrupted for a sidebar conference with Ms. Penegal, the victim’s caseworker, in an attempt to determine if the questions could be phrased differently for the victim, although the defense counsel expressed discomfort at asking leading questions. When the witness was again unresponsive, the defense counsel changed his fine of questioning to ask the victim about how she became acquainted with Ms. Penegal; the victim again stated that it was because she had been sexually abused. W.H. denied any recollection of ever telling anyone, including Ms. Penegal, the assistant district attorney, or the sheriffs detective, that “someone had done it with” her; she then testified that she told her mother and her next door neighbor (whose name she did not remember) that she had done it with somebody. W.H. could not remember exactly what she told her mother and neighbor, but she remembered she told them she had done it with her brother. W.H. then repeatedly denied ever telling her mother or her neighbor that she had “done it” with anybody other than her brother.
*1034 In still further questioning, W.H. was again asked if she could “remember anybody ever doing anything to you?” at which point she testified that Mr. Allen and her brother David “had sex” with her. When asked to explain what she understood by the term “had sex,” W.H. replied that it meant “he did it with me.” When asked what “did it with me” meant to her, W.H. stated that it meant, “He sexually abused me.” W.H. was unable to answer the specific question, ‘What | sdid he do to you?” At this point in the hearing, the trial court called for a break for the witness. After the break, defense counsel repeated his question, but W.H. was again unable to respond because she could not remember.
State v. Allen, 99-2579, pp. 2-7 (La.App. 4 Cir. 1/24/01), 781 So.2d 88, 89-92.
The defendant asserts three assignments of error: (1) that he has been denied appellate review because the transcript of the hearing on the motion to reconsider the sentence is lost; (2) that the trial court erred in allowing a social worker to testify at the pre-sentencing hearing; and (3) that the sentence is excessive.
Louisiana Const. Art. I, § 19 provides that “[n]o person shall be subjected to imprisonment ... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based.” Louisiana C.Cr.P. art. 843 requires the recording of “all the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements and arguments of counsel” in all felony cases. Louisiana R.S. 13:961(C) provides that, in criminal cases tried in the district courts, the court reporter shall record all portions of the proceedings required by law and shall transcribe those portions of the proceedings required.
A criminal defendant has a right to a complete transcript of his trial proceedings, particularly where appellate counsel on appeal was not also trial counsel. State v. Landry, 97-0499 (La.6/29/99), 751 So.2d 214, 215. Where a defendant’s attorney is unable, through no fault of his own, to review a substantial portion of the trial record for errors so that he may properly perform the duty of appellate counsel, the interests of justice require that a defendant be afforded a | finew, fully recorded trial. Id. This court, however, has held that under some circumstances a complete appellate review of a conviction and sentence can be accomplished, even when portions of the trial record are missing. See, e.g., State v. Cooley, 98-0576 (La.App. 4 Cir. 12/2/99), 747 So.2d 1182, 1187.
A slight inaccuracy in a record or an inconsequential omission from it that is immaterial to a proper determination of the appeal will not cause an appellate court to reverse a defendant’s conviction. State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713, 722. An incomplete record may nonetheless be adequate for appellate review. State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473, 480. Finally, a defendant is not entitled to relief absent a showing of prejudice based on the missing portions of the transcripts. Id.
In the instant case, the record does not contain the transcript of the hearing on the motion to reconsider the sentence. According to the defendant’s brief, the transcript was lost in the courthouse fire in Plaquemines Parish. Nonetheless, the minute entry of the hearing is part of the record; it indicates that the judge, the district attorney and his first assistant, the defendant and his attorney were present. The minute entry states in pertinent part:
*1035 Mr. Barbee [defense attorney] presents arguments to the court, followed by rebuttal from the State. The Court questions counsel for the defendant and counsel for the State.
The Court gave reasons and denied motion. Objections from Mr. Barbee were noted for the record.
(Record, Vol.l, p. 20-A).
In his motion to reconsider the sentence, the defendant’s counsel argued only that the sentence was excessive in that the amount of time imposed is not proportional to the crime committed. (Record, Vol.l, p. 115). The same argument is made on appeal.
[7The defense maintains that this case is similar to State v. Pairean, 395 So.2d 687, 690 (La.1981), where the Supreme Court held that an incomplete record required vacating the multiple offender sentence and remanding the case for resentencing. In Pairean the transcript of the multiple bill hearing indicated that certified copies of the prior convictions were filed into the record; however, on appeal the documents were not part of the record, and thus not subject to review.
Pairean is distinguishable from the case at bar in that the missing records in Paire-an were evidentiary, whereas in the instant case, the missing transcript contains merely legal arguments from the parties on a single issue. Although the transcript of the reconsideration of sentencing hearing is missing, the transcripts of the pre-sentencing and sentencing hearings are part of the record. They contain Allen’s attorneys’ arguments as to the sentence, and the issue is part of this appeal. Moreover, the defendant has suffered no prejudice as a result of the missing hearing transcript.
There is no merit in this assignment.
The defendant next contends that the trial court erred in allowing Ms Robin Penegal, a social worker at the Office of Community Services in Plaquemines Parish, to testify at the pre-sentencing hearing of April 20, 1999. At the hearing, the defense attorney objected to her testimony, and the trial court directed him to La.C.Cr.P. art. 894.3, Notice to victim for | Ssentencing.[2] Under that article, a victim, her parent, or a guardian may attend the sentencing hearing and testify. The defendant on appeal argues that Ms Penegal does not fit into any listed category. Under the circumstances, however, we disagree. The victim’s father is dead, her mother incapacitated, and she is in foster care. Thus, the State of Louisiana has custody of the victim, and, as the social worker following the victim for OCS, Ms Penegal was serving as her guardian. Under La.C.Cr.P. art. 894.3, Ms Penegal had a right to testify at the pre-sentencing hearing.
There is no merit in this assignment.
In his final argument, the defendant contends that his fifteen-year sentence is excessive. Defendant maintains that he was sentenced as though he were a multiple offender under La. R.S. 15:529.1.
In fact, the defendant was sentenced under La. R.S. 14:43.2 for aggravated sexual battery. That statute provides for a *1036 penalty of imprisonment with or without hard labor and without benefits of parole, probation, or suspension of sentence for no more than fifteen years. Thus, he received the maximum term.[3]
Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment and is nothing more than the purposeless imposition of pain and suffering and is grossly out of | ^proportion to the severity of the crime. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993). Because the trial court has broad discretion in imposing a sentence within statutory limits, a reviewing court can set it aside only if it is clearly excessive, rather than because another sentence might have been appropriate. State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959.
In reviewing a claim of excessive sentence, the appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines and whether the sentence is warranted under the facts established by the record. State v. Soco, 441 So.2d 719 (La.1983). Because a sentence could be excessive even though it falls within the statutory limit, the trial court’s statement regarding the factors considered under Article 894.1 of the Code of Criminal Procedure is an important aid in reviewing an alleged excessive sentence. State v. Cann, 471 So.2d 701, 703 (La.1985).
Prior to sentencing in this case, the judge ordered a pre-sentencing investigatory report. At sentencing the judge noted that, according to the report, the defendant had two prior felony offenses for distribution of cocaine. The defense objected that the defendant should be treated as a first offender because his distribution of cocaine convictions occurred on June 12, 1997, after the commission of the aggravated sexual battery, which occurred between August 17 and October 22, 1996. The trial court noted that it could not ignore the defendant’s record of disturbing the peace, two counts of distribution of cocaine, drug traffic loitering, and flight from an officer.
At sentencing the trial court addressed the defendant:
The Court has ... applied the following aggravating factors in determining your sentence: There was deliberate cruelty to the victim, you knew the victim was particularly vulnerable due to her |inyoung age, her very young age. You used your position as the boyfriend of the victim’s sister to facilitate this offense, and you knew or you had reason to know that this crime would cause significant, permanent mental injury to the victim, a child. You encouraged the victim’s brother to commit the same crime against and with the victim. And finally to this day you have shown no remorse or asked for any forgiveness or shown any regret.
The Court has applied the following mitigating factors in determining your sentence: The Court is cognizance [sic] of the prior occurrences and the other convictions and the time scheduling allowed. However, those prior convictions, prior acts of criminal activity must be weighed against you. But the Court does consider your plea of guilty and accept [sic] the responsibility of that crime in that plea. But to the extent or *1037 beyond the plea of guilty, no remorse, no regret, no apology, no forgiveness has been asked.
(Sentencing transcript, Record, Vol. 2, pp. 14-15).
The court continued by stating that “it is a case of this type that is the most serious in our society, it’s a defenseless child against an adult.” (Id., p. 17). The trial court concluded by finding the crime “inexcusable” and sentencing the defendant to serve fifteen years at hard labor without benefits; i.e., the maximum sentence.
The judge indicated that just prior to sentencing he had read though the transcripts of the case and the sentencing guidelines. His thoughtful review of the defendant’s history, when considered with the facts established in the record, provides this court with a record of the considerations taken into account and an adequate factual basis for the sentence.
We find that the court did not consider sentencing Allen as a multiple offender; rather, the court found him to be one of the worst type of offenders on this offense, and sentenced him accordingly.
Furthermore, Allen was originally charged with aggravated rape of a child under twelve, an offense carrying a penalty of death or life imprisonment. By pleading guilty to aggravated sexual battery, he reduced his incarceration period to fifteen years. We do not find the sentence to be excessive or grossly | t ¶ disproportionate to the seriousness of the crime under the circumstances established in the record.
There is no merit in this assignment.
Accordingly, for reasons stated above, the defendant’s sentence is affirmed.

AFFIRMED.

. The victim’s full name is being omitted from this opinion to protect her identity.

. La.C.Cr.P. art. 894.3 provides in pertinent part:
(A) Before sentencing a defendant who has been convicted of a violation of a sex offense as defined in R.S. 15:541(14.1), ... the clerk of court shall give written notice of the date and time of sentencing ... to the victim, or the victim’s parent or guardian....
(A) The victim or the victim’s parent or guardian who desires to do so shall be given a reasonable opportunity to attend the hearing and to be heard.

. The fifteen-year sentence is to be served consecutively to the other sentences the defendant is serving for distribution of cocaine.