# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**09-72**

**STATE OF LOUISIANA**

**VERSUS**

**BROADUS DARNEAL DAVIS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 63500B
HONORABLE CHARLES B. ADAMS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**MARC T. AMY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy and Shannon J. Gremillion, Judges.

**AFFIRMED.**


Don M. Burkett
District Attorney
Charles D. Soileau
Assistant District Attorney
Post Office Box 1557
Many, LA   71449
(318) 256-6246
COUNSEL FOR APPELLEE:
    State of Louisiana

Edward K. Bauman
Louisiana Appellate Project
Post Office Box 1641
Lake Charles, LA   70602-1641
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:
    Broadus Darneal Davis

AMY, Judge.

A jury convicted the defendant of one count of distribution of a Schedule II drug, cocaine. The trial court imposed a sentence of sixteen years at hard labor. On appeal, the defendant questions the sufficiency of the evidence for the conviction and of the evidence used to identify him for habitual offender status. He also asserts that the sentence imposed is excessive. We affirm.

## Factual and Procedural Background

The Sabine Parish Sheriff's Office used an informant to conduct an undercover narcotics operation on January 29, 2007 in Zwolle, Louisiana. The informant, fitted with surveillance equipment, entered a target location in an attempt to purchase crack cocaine. The State alleges that, while in the house, the informant encountered the defendant, Broadus Darneal Davis, who sold the informant a rock of crack cocaine.

The Stated charged the defendant by bill of indictment with one count of distribution of a Schedule II controlled dangerous substance, a violation of La.R.S. 40:967(A)(1). A jury convicted the defendant of the charge. The State then charged the defendant as a habitual offender. The defendant responded by filing a motion to quash. The trial court denied the motion and found the defendant to be a second felony offender. The trial court sentenced the defendant to sixteen years at hard labor. It later denied the defendant's motion to reconsider sentence.

The defendant appeals, assigning the following as error:

1. There was insufficient evidence to support Broadus Davis' conviction for distribution of cocaine.

2. There was insufficient evidence to prove that Broadus Davis was the same individual convicted of distribution of cocaine in 1998.

3. The trial court erred in imposing an excessive sentence.

**Discussion**

*Errors Patent*

This court's review for errors patent on the face of the record reveals no errors. *See* La.Code Crim.P. art. 920.

*Sufficiency of the Evidence*

The defendant questions the sufficiency of the evidence presented in support of the conviction of distribution of cocaine. The defendant contends that, since the alleged transaction was not captured on the video recording, the conviction rested on the testimony of the informant, Ronnie Arteberry. He asserts that this testimony was untrustworthy and, therefore, the jury had insufficient evidence to determine that he sold crack cocaine beyond a reasonable doubt.

A conviction is reviewed for sufficiency of the evidence as follows:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Mussall*, 523 So.2d 1305 (La.1988). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. *State v. Silman*, 95-0154 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. *State v. Bordenave*, 95-2328 (La.4/26/96), 678 So.2d 19, 20. It is not the function of an appellate court to assess credibility or re-weigh the evidence. *Id.*

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86.

At trial, Detectives Randy Murphy and Carolyn Howard of the Sabine Parish Sheriff's Department explained the procedures used in this particular investigation and the procedures their office typically employs in using an undercover informant in narcotics cases. Detective Murphy testified that most of their information comes

2

from confidential informants. He testified that many of the informants are motivated by the ability to "work off" charges.[1]

Detective Murphy informed the jury that preparation of the informants is a "long drawn out process." He explained that he must first determine if they are familiar with the drug trade and are willing to testify. They must also be educated on "the way [the investigation] must be done to have a prosecutable case."

Detective Murphy testified that, in this case, they were conducting an undercover operation using Mr. Arteberry in a "camera buy." He testified that Mr. Arteberry was acting as an informant in order to work off a charge of flight from a Wildlife and Fisheries agent. Detective Murphy stated that he met with Mr. Arteberry the day of the investigation and that he searched Mr. Arteberry's person and vehicle for currency and controlled dangerous substances. Neither drugs nor money were found in the search. Afterwards, he and Detective Howard fitted Mr. Arteberry with a video camera. An audio transmitter was also placed in the car.

According to Detective Murphy, the target location for this operation was a trailer where previous purchases had been made from different individuals. He stated that at this location, "you may go looking for one target and you end up actually buying from someone else while you're at that residence." Detective Murphy explained that, in following Mr. Arteberry to the target location, he was only out of their sight for fifteen to twenty minutes. After Mr. Arteberry purchased the cocaine,

---

[1] Detective Murphy explained that:

> When I say working off charges, you may have a drug addict that gets arrested for something whether it be possession or a traffic violation . . . . And he will make it known to myself and my partner, Detective Howard, that he may be in a position to help us if we will help him. . . . So when I say work off charges, that's what I mean.

Detective Murphy instructed him "[t]o return to the rendezvous point or the point where [they] originally started from."

Detective Murphy explained that Mr. Arteberry gave Detective Howard a package purchased from the target location. Detective Murphy testified that Mr. Arteberry reported to him that he found the defendant at the location, although he had been looking for someone else. He stated that Mr. Arteberry did not know the defendant's name, but that he was a boyfriend or acquaintance of the person he expected to find. Still photographs were downloaded from the video surveillance, one of which was introduced into evidence.

Like Detective Murphy, Detective Howard testified as to the investigation and also explained that, when Mr. Arteberry returned with the purchase, she packaged, labeled, and sealed it. She also downloaded the contents of the surveillance equipment onto her computer. The resulting DVD of the video surveillance was viewed by the jury. According to Detective Howard, the crime laboratory reported that the package handed over by Mr. Arteberry was cocaine. The State entered the crime lab report into evidence.

Mr. Arteberry testified that, in December 2006, he was charged with flight from an officer and that his motivation in working undercover was to work off this charge and also help the community. Although Mr. Arteberry had no prior convictions before this charge, he testified that he had been arrested on a felony drug charge in another parish. Mr. Arteberry explained that he developed a drug problem in May 2006, due to a divorce proceeding.

Mr. Arteberry noted that, prior to traveling to the target location, the detectives searched him and his vehicle "to make sure that [he] didn't have any contraband[.]"

4

He described being fitted with the surveillance equipment and testified that, upon arriving at the house: "[T]he Defendant was in the kitchen at the table rolling up a marijuana cigarette or a blunt as they call it. And I asked him to buy some hard or buy cocaine." He "asked to buy twenty, twenty dollar rock of crack cocaine." After the defendant removed the substance from his pocket, Mr. Arteberry requested "a good deal on a forty[,]" which, he explained was two rocks of crack cocaine. However, another person arrived, who also wanted to purchase cocaine, so Mr. Arteberry "told him twenty would be fine." Mr. Arteberry identified the defendant as the person who sold him the cocaine.

After the jury viewed the DVD video from the alleged transaction, the State reviewed the video with Mr. Arteberry as follows:

Q       Mr. Arterberry, you saw the same video we saw. What did you ask for specifically?

A       Rock cocaine.

Q       And what did you call it?

A       Hard.

Q       And what was on the table that Mr. Davis was handling?

A       Before?

Q       (Nodded in the affirmative)

A       Marijuana.

Q       And how much hard did he have?

A       He just had a little.

Q       Is that what I saw with the left hand coming out of the pocket?

A       Yes, sir.

Q       And what was in that package?

A    Two little rocks in a yellow cellophane or plastic.

Q    And when you had said something about forty, were you intending to get both of those for forty?

A    Yes, sir.

Q    Why did you only take one?

A.    Because the other guy come in and he was wanting some, so.

Q    The guy with the bandana that had the pills?

A    Yes, sir.

Q    And what did you do with that rock of hard after you purchased it?

A    After I purchased it I walked out of the house, got into my vehicle and I stuck it in my pocket. And then after I stuck it in my pocket, I called Detective Randy and let him know that I made a purchase. And we met back at the same place we met up at and he followed me back.

Q    I show you what I've marked as S-3. What's this yellow stuff?

A    Inside the plastic?

Q    Yes, sir.

A    It's rock cocaine.

Q    No, what's the yellow? What's this yellow stuff here?

A    Oh that's plastic.

Q    Did you put that around it?

A    No, sir.

Q    Was it like that when you got it?

A    Yes, sir.

Q    And inside is the rock of crack cocaine?

A    Yes, sir.

Mr. Arteberry testified that he is a diesel mechanic, is forty-eight years old, and that he holds an Associate's Degree in Business Administration. He testified that he used cocaine for four or five months after going through a divorce. He stated this was his first instance of using drugs after using methamphetamines when he was younger.

Mr. Arteberry testified that, in 2006, he was arrested for possession of cocaine in Natchitoches Parish and sentenced to probation. During this time, he was also charged with flight from an officer in Sabine Parish. He explained that, although rehabilitation was not a condition of his probation for the drug offense, he voluntarily entered treatment. Mr. Arteberry testified that he did not know that his charge of flight from an officer was a misdemeanor when he agreed to work with the detectives on this case. He also stated that this agreement was for the misdemeanor in Sabine Parish only, not the felony charge in Natchitoches Parish. Mr. Arteberry testified that, although he still used crack cocaine at the time of this investigation, he was not using drugs on that particular night.

Defense counsel questioned Mr. Arteberry about the video as follows:

Q      I understand. But what I'm saying is the equipment captured my client at a table with what you're saying was marijuana, rolling a marijuana cigarette, correct?

A      Well that's what--yes, that's what it was.

. . . .

Q      In fact the camera was on him the whole time, wasn't it?

A      Oh, I thought you were talking about the marijuana. I mean it was on me so wherever I walked and went that's where the camera was.

Q      You were sitting at a table.

A      I was sitting at a table.

7

Q     Well how come when he stuffed the marijuana stuff in the package or whatever you say he was doing, how come the camera went off onto the ceiling and the--

A     Sir, I have no idea.

Q     My point being is, I, you, these people, no one on that tape saw him hand you anything on that tape, nothing, did they?

A     I mean the tape shows where I bought it and--

Q     No, no, answer my question.  You sat there and watched the tape too, didn't you?

A     Yes sir, my head was down most of the time.  It's not something I'm proud of.

Q     Well did you ever see my client hand you anything on that tape?

A     He handed it to me.  Whether it was on the tape-

Q     No, did you see it on tape?

A     No sir, I don't know if I seen it or not.

On re-direct, the State re-played the portion of the surveillance tape where Mr. Arteberry asked for the drugs, and asked him to show the jury when the defendant took the drugs out of his pocket.  Mr. Arteberry identified that portion of the video and stated: "It's coming out of his pocket right there.  That's it.  He was getting it right there. You can see the plastic in his hand."  The video was played once again, with Mr. Arteberry noting the point at which the defendant pulled something from his pocket.  When asked, "Did he hand it to you from there," Mr. Arteberry replied, "Yes, sir. Well he got it out and the other guy come in and it kind of startled me and I stood up.  And he handed it to me and then I walked out."

The defendant challenges Mr. Arteberry's credibility, arguing that Mr. Arteberry was not known by the detectives, had not previously engaged in undercover work, and was an admitted drug user at the time of the investigation.  The defendant

8

further asserts that Mr. Arteberry "could have easily hidden a twenty-dollar rock of crack cocaine, which is about the size of a pencil eraser."

However, the jury heard Mr. Arteberry's testimony, including the information regarding his drug use, his interaction with the detectives, and the searches of his person and vehicle for money or contraband. Mr. Arteberry was also cross-examined by defense counsel. Further, his statements as to the series of events was corroborated by the investigating detectives. The jury's credibility determinations made in regard to these witnesses were questions of fact and, accordingly, rested solely with the trier of fact. *See Macon*, 957 So.2d 1280. Having reviewed this testimony and the entirety of the record, we find that the jury's determination is supported under the *Jackson* standard.

This assignment lacks merit.

*Habitual Offender*

The State commenced a habitual offender proceeding against the defendant based upon a 1998 conviction of distribution of cocaine. The defendant argues, however, that "there was insufficient evidence to prove that [he] was the same individual convicted of distribution of cocaine in 1998."

In *State v. Payton*, 00-2899 (La. 3/15/02), 810 So.2d 1127, 1130-31, the Louisiana Supreme Court held:

> "To obtain a multiple offender conviction, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony." *State v. Neville*, 96-0137 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, 538-39, *writ denied*, 97-1637 La.12/12/97), 704 So.2d 1180 (citations omitted). In attempting to do so, the State may present: (1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical drivers license number, sex, race and date of

birth. *See*, *e.g.*, *State v. Westbrook*, [392 So.2d 1043 (La.1980) ]; *see also State v. Curtis*, 338 So.2d 662, 664 (La.1976).

In its Bill of Information as Habitual Felony Offender, the State alleged that the defendant was convicted of distribution of a controlled dangerous substance, Schedule II, on June 2, 1998, in the Eleventh Judicial District Court. The transcript of the habitual offender hearing indicates that the State introduced the suit record from this prior conviction, *State v. Broadus Darneal Davis,* Docket Number 49,888.

Detective Murphy explained that, not only was he involved in the arrest of the defendant in this case, but that he also served the arrest warrant in the offense underlying the 1998 distribution of cocaine conviction. He identified the defendant in open court as the same individual he previously arrested in the earlier case. He explained that the earlier booking form listed the arrestee's birth date as January 6, 1980, the same as the defendant in this case. Upon questioning by the trial court, Detective Murphy stated that there was "no doubt" that the defendant was the same individual as in the prior case.

Detective Steven Bradley Marr of the Sabine Parish Sheriff's Department testified that he was a case agent on the investigation leading to the 1998 conviction. He explained that he recorded the date of birth of the suspect as January 6, 1980, the same as the defendant. When asked if he had any personal recollection of the identity of the defendant, he explained that he knew him "as in seeing him on the street and seeing him in the jail or whatever."

In light of the detectives' identification of the defendant, the details of the prior arrest, and the introduction of the record in the prior offense, we find that the trial court did not err in finding sufficient proof of the prior conviction.

This assignment of error has no merit.

10

*Excessive Sentence*

The defendant asserts that his "sentence of sixteen years at hard labor for the possession of one twenty dollar rock of crack cocaine is excessive." He contends that the record is "void of any aggravating or mitigating factors which would justify the imposition of a sixteen year sentence." He further argues that the trial court is "authorized to particularize the sentence imposed to the offender and the offense and to disregard the punishment range required by the habitual offender statute in order to insure that constitutional, non-excessive sentences are imposed," citing *State v. Dorthey*, 623 So.2d 1276 (La. 1993), and *State v. Pollard*, 93-660 (La. 10/20/94), 644 So.2d 370.

In *State v. Davenport*, 07-254, pp. 3-4 (La.App. 3 Cir. 10/3/07), 967 So.2d 563, 565, a panel of this court explained:

> The Eighth Amendment to the United States Constitution and La. Const. art. 1, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Nevertheless, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. . . . The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957,*cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

The defendant was convicted of distribution of a controlled dangerous substance, a violation of La.R.S. 40:967(A)(1). The sentencing range for that offense is imprisonment at hard labor for not less than two years nor more than thirty years and a fine of not more than fifty thousand dollars. La.R.S. 40:967(B)(1). The defendant's adjudication as a habitual offender subjected him to a sentence of not less

than one-half the longest possible sentence and not more than twice the longest possible sentence for a first conviction. La.R.S. 15:529.1(A)(1)(a). Thus, the potential sentencing range for this defendant was fifteen to sixty years at hard labor.

Accordingly, the defendant's sixteen-year sentence is only one year more than the mandatory minimum. The record also reveals that the trial court adequately considered the relevant sentencing factors, as demonstrated by the following remarks:

> THE COURT: And the facts of this particular case are revealed in the trial record. And I will--this Court did preside over that trial and is fully aware of it. And will not go into any other greater detail other than to say the evidence was clear Mr. Davis was distributing cocaine on the date in question. I believe it was, my notes indicate it was January 29, 2007. The Court has reviewed the pre-sentence investigation report. His prior criminal history is reflected in the record from the habitual offender hearing as well as in the pre-sentence investigation report. The PSI reflects that Mr. Davis was provided an opportunity for substance abuse treatment back in 2001. In 2002 on a probation period, he was arrested for absconding from supervision. His subsequent probation was revoked or excuse me, parole was revoked. His case was subsequently or ultimately terminated unsatisfactorily. Personal background on Mr. Davis in the PSI indicates two brothers, one sister, never been married, no children, twenty-eight years old. Are you still twenty-eight, Mr. Davis?

> THE DEFENDANT-MR. DAVIS: Yes. Sir.

> THE COURT: Completed the eighth grade or went through or until the eighth grade, at which point and time, according to this, it says you did not want to go anymore. The PSI indicates that you've never had a job in your entire life. Don't own anything of value. Never been in the military. Having reviewed, Mr. Davis, your criminal history, the facts of this particular case, your personal history, it is the sentence of this Court, Mr. Davis, that you be confined to the Louisiana Department of Corrections at hard labor for a period of sixteen years. You're given credit for the time that you've served thus far. Notified you have two years from the date your conviction and sentence are final within which to apply for post conviction relief.

> MR. MCRAE: Your Honor, we give notice of intent to appeal.

> THE COURT: Certainly. And to reiterate for the record, that with or without the habitual offender determination, the Court believes that the sixteen years is an appropriate sentence for this Defendant.

Considering the circumstances of this case, and in light of the factors enunciated by the trial court, we find that the defendant's sentence is not excessive.

## DECREE

For the foregoing reasons, the conviction and sentence of the defendant are affirmed.

**AFFIRMED.**