JOAN BERNARD ARMSTRONG, Chief Judge.
 

 _JjThe defendant, Peter Lewis, appeals his conviction for aggravated battery and his twenty-year sentence as a multiple offender, contending only that the trial court erred by finding him to be a fourth offender. We affirm.
 

 
 *486
 

 STATEMENT OF CASE
 

 On January 6, 2009 the defendant was charged with attempted first degree murder of his wife, Janet Lewis. On October 8, 2009, at the end of a two-day trial, a jury found him guilty of aggravated battery, a violation of La. R.S. 14:34. On December 15, 2009, the court denied his motion for post-verdict judgment of acquittal. He waived all delays, and the State filed a multiple bill, alleging that the appellant was a fourth offender. After a full hearing on the bill, the court found him to be a fourth offender. The court then sentenced the appellant to serve twenty years at hard labor without benefit of probation. The court denied the appellant’s motion to reconsider sentence, but granted his motion for appeal.
 

 STATEMENT OF FACT
 

 Peter Lewis was convicted of the aggravated battery of his wife, Janet Lewis, in connection with a violent domestic dispute that occurred in their residence on October 25, 2008.
 

 | ¿The State began the presentation of its case by playing the tape of Ms. Lewis’ 911 call concerning this incident.
 

 Russ Latimer, a paramedic employed by the City of New Orleans, testified that he responded to a call from 1534 Painters at approximately 12:30 a.m. on October 25, 2008. Once there, he found a female victim lying on her stomach with a wound to her left temple. The victim also had low blood pressure. He transported her to University Hospital. On cross-examination, he testified that he recorded the victim’s pain as a five in a range of one to ten.
 

 Officer Gary Salinger of the NOPD Crime Lab testified that he responded to the call of the incident and took several photographs of the scene and of the victim, who had not yet been taken to the hospital when he arrived. Off. Salinger identified and described various photographs that he took, some of which showed blood on the floor near the front door and next to the bed in a bedroom. He also identified a photograph of a scabbard for a sword that was lying on the bed, as well as a photograph showing two knives lying on a dresser in the bedroom. He testified that he seized the scabbard but not the knives.
 

 The State introduced a certified copy of Janet Lewis’ medical records.
 

 On the second day of trial, Officer Nicholas Williams testified as to a prior domestic dispute between the defendant and his wife. Regarding that prior incident, Off. Williams testified that at approximately 2:30 a.m. on August 10, 2008, he responded to a call concerning a domestic battery at a residence in the 1400 block of Frenchmen Street wherein a man struck his wife or girlfriend. He testified that the dispatch included a description of the man, who had fled the residence. As he and his partner neared the residence, they saw the defendant, who fit the description, riding a bicycle on N. Claiborne Avenue between Frenchmen Rand Touro Streets. They stopped him, advised him of their investigation and of his
 
 Miranda
 
 rights, handcuffed him, and transported him to the residence in the 1400 block of Frenchmen, where the victim identified him. He testified that the victim was bleeding from a laceration to the mouth, and the officers detained Lewis, issuing him a municipal citation for domestic violence by simple battery.
 

 On cross-examination about the prior incident, Off. Williams testified that when he arrived at the residence, many people were standing in the area because the victim and Lewis had just had a party, but none of the people would talk to the police about the incident. No one other than the victim was inside the residence. He testified that Lewis stated that they had been drinking
 
 *487
 
 that night. Ms. Lewis declined any medical help, telling Off. Williams that she would seek help on her own.
 

 The State’s final witness was Janet Lewis, who stated that she and Lewis had been married since 2008. Ms. Lewis testified that in March 2008, she and Lewis fought for a reason that she could not remember, and at that time, he slapped her, busting her lip. She testified that she hit him back. She stated that she did not call the police after this incident, and Lewis continued to live with her. She then recounted the August 2008 incident. She stated that August 8 was her birthday, and they threw a party for her that night. She described Lewis as having had an “attitude” all day, and during the party that night, he started a big fight with her that caused their guests to leave. She stated that while they were cleaning up the back yard after the party, they started fighting again, and Lewis pushed and choked her. She testified that she went to a telephone to call the police, and he ripped the phone from the wall. She testified that she then got to another phone and called 911, and Lewis pulled a sword on her and then fled. She testified that she gave the | responding officers a description of Lewis and his clothing, and the officers soon returned with Lewis. She admitted that although Lewis threatened her with the sword, he did not use it, instead leaving it on the nightstand in the bedroom.
 

 Ms. Lewis testified that she obtained a restraining order against Lewis, but after he got out of jail, he called her, and they got together to try to reconcile. Their attempts were not successful. She stated that on October 25, 2008, Lewis was still living with her, and he had left the residence. She testified that she, her brother, his cousin, and another man were sitting on the front steps talking when Lewis returned and tried to join in the conversation. She told him that they were not talking with him, and she and Lewis became embroiled in yet another argument. Ms. Lewis testified that when she went inside to use the bathroom, Lewis followed her inside. She stated that when they got to the bedroom, he pushed her, and they began struggling. She stated that she got him pinned on the bed, but he got away, went to the closet, and came out brandishing a sword. She stated that he first hit her on the back of the neck with the sword, and she turned and grabbed the sword’s blade. She soon released it, and he then hit her on the side of the head with the sword. She testified that Lewis told her: “Look what you made me do. I thought you said you loved me.” Lewis left, and she called 911. Ms. Lewis testified that she did not remember seeing the two knives on the dresser, and she denied touching either of them during the altercation with Lewis. She stated that after the police and EMS personnel arrived, she was taken to University Hospital. Once she was released, she had a friend take photographs of her injuries, which the State displayed to the jury. She insisted that Lewis hit her first, and she denied threatening him with any weapons.
 

 |sOn cross-examination, Ms. Lewis admitted that she did not call the police in connection with the March 2008 incident. She reiterated that Lewis pushed and choked her during the August 2008 incident. She admitted that she allowed Lewis to move back with her after the August incident because she wanted to try to work things out in their marriage. She also admitted that she and Lewis had been drinking before the October 2008 incident. She stated that after he left and she called the police, she went to the front door to unlock it for the police and then walked back to the bedroom, where the 911 dispatcher was still on the phone, and at that point she passed out.
 

 
 *488
 

 ERRORS PATENT
 

 A review of the record reveals no patent errors.
 

 ASSIGNMENT OF ERROR
 

 By his sole assignment of error, the appellant contends that the trial court erred by adjudicating him a fourth offender. Specifically, he alleges that the State failed to show the discharge date from his most recent prior conviction in order to prove that ten years had not lapsed between his release from that sentence and the commission of the present offense. He also argues that the State failed to prove that he was the person who committed one of the earlier convictions because there were no fingerprints on the bill of information for that case. Neither of these arguments has merit.
 

 At the multiple bill hearing, the State called Officer Joseph Pollard, whom the parties stipulated was an expert in the comparison and examination of latent fingerprints. Off. Pollard took the appellant’s fingerprints prior to the start of the hearing which were identified as Exhibit S-l. He then identified an arrest register as Exhibit S-2 and the matching cert, pack from case # 377-076 as Exhibit S-2. hThese documents showed that Peter Lewis pled guilty on October 4, 1995, to the illegal possession of a stolen vehicle and to being a second felony offender, and the court sentenced him to serve five years at hard labor. Off. Pollard testified that he compared the fingerprints on S-l with those on S-2 and found that they matched, thereby leading him to conclude that the appellant was the person convicted in case # 337-076.
 

 Off. Pollard then identified another arrest register as Exhibit S — 4, and a cert, pack from case # 358-508 as Exhibit S-5. These documents showed that Peter Lewis pled guilty to distribution of a false substance represented to be cocaine in January 1993. Off. Pollard compared the fingerprints on the back of S-4 and testified that they matched those in S-l, concluding that the appellant was the person convicted in case # 358-508.
 

 Finally, Off. Pollard identified a third arrest register as Exhibit S-6, and a cert, pack from case # 339-274 as Exhibit S-7. These documents showed that Peter Lewis pled guilty to illegal possession of a stolen automobile in December 1989. Off. Pollard compared the fingerprints on the back of the bill of information with those in exhibit S-l and concluded that the appellant was the person convicted in case # 339-274.
 

 The defendant’s first complaint regarding the multiple bill is that the court erred by finding him to be a fourth offender because the State did not establish that less than ten years elapsed between his release from the 1995 sentence and the commission of the present offense. He notes that although he received a five-year sentence in 1995, and the present offense occurred in 2009, the State failed to show that he was not given an early release, such as parole or good time. He concludes 17that because the State did not establish that this time period did not lapse, the court could not find him to be a fourth offender.
 

 In support, he cites La. R.S. 15:529.1 C, which provides:
 

 The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions alleged in the
 
 *489
 
 multiple offender bill and the date of the commission of the following offense or offenses. In computing the intervals of time as provided herein, any period of parole, probation, or incarceration by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods between the expiration of the maximum sentence or sentences and the next succeeding offense or offenses.
 

 He argues that he may have been eligible for good time release during the five years of his sentence, and thus the State did not meet its burden of showing that ten years had not elapsed between his release and the commission of the current offense in October 2009.
 

 Both at the hearing and in its brief, the State responded that under the provisions of La. R.S. 15:571.3 C, he was not eligible to earn good time diminution of sentence. La. R.S. 15:571.3 provided during the duration of the five years of the defendant’s sentence:
 
 [1]
 

 C. Diminution of sentence shall not be allowed an inmate in the custody of the Department of Public Safety and Corrections if:
 

 (1) The inmate has been convicted one or more times under the laws of this state of any one or more of the following crimes:
 

 [[Image here]]
 

 (s) A violation of the Louisiana Controlled Dangerous Substances Law which is a felony; [and]
 

 * ⅜ *
 

 (2) The inmate has been sentenced as an habitual offender under the Habitual Offender Law as set forth in R.S. 15:529.1, and
 

 (3)The inmate’s last conviction for the purposes of the Habitual Offender Law, was for a crime: ... (b) committed on or after September 10,1977.
 

 Here, the defendant pled guilty in 1995 to illegal possession of a stolen car. At that time, he also pled guilty to being a second felony offender. Although not the prior conviction listed in the multiple bill, he pled guilty in 1993 to the felony offense of distribution of a substance falsely represented to be cocaine and received a sentence of two and a half years at hard labor. Under La. R.S. 15:571.3, he was not eligible for good time diminution of sentence under subpart C because he was convicted at least once of a felony offense under the Controlled Dangerous Substance laws; he pled guilty to being a multiple offender; and he committed the crime after September 10, 1977. Moreover, even if he was eligible for good time release, as per La. R.S. 15:571.5 B(2), his release would be supervised as if he had been released on parole “for the remainder of the original full term of sentence.” Therefore, even if he had been released before 2000, he would still have been under the supervision of the D.O.C. and thus the time of his release would not have counted toward the ten years set forth in La. R.S. 15:529.1 C.
 

 The date of actual discharge from the Department of Corrections determines the expiration of the previous sentence.
 
 State v. Lorio,
 
 94-2591 (La.App. 4 Cir. 9/28/95), 662 So.2d 128, 130. Likewise, as per La. R.S. 15:574.4 A(1), the |3appellant would not have been eligible for parole because he had been convicted of three or more felony offenses. Therefore, the defendant’s first basis for contending that the trial court erred in finding him to be a fourth time felony offender is without merit.
 

 
 *490
 
 Alternatively, the defendant argues that the trial court erred by finding him to be a fourth offender because the State failed to show that he was the same person convicted in one of the earlier cases. He argues that although Off. Pollard was able to match the fingerprints found on one of the arrest registers to the fingerprint card taken on the day of the hearing, there were no fingerprints on the bill of information for the same case. Although he does not indicate to which prior conviction this argument applies, the transcript of the multiple bill hearing indicates that counsel raised this issue in connection with case # 358-508. This claim also has no merit.
 

 In
 
 State v. Henry,
 
 96-1280 p. 7 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, 325, this court set forth the State’s burden to prove that a defendant is a multiple offender:
 

 To obtain a multiple offender conviction, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony.
 
 State v. Hawthorne,
 
 580 So.2d 1131 (La.App. 4th Cir.1991). Various methods are available to prove that the defendant on trial is the same person convicted of the prior felony offense, such as by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver’s license number, sex, race and date of birth.
 
 State v. Westbrook,
 
 392 So.2d 1043 (La.1980);
 
 State v. Curtis,
 
 338 So.2d 662 (La.1976);
 
 State v. Pitre, 532
 
 So.2d 424 (La.App. 1st Cir.1988),
 
 writ den.,
 
 538 So.2d 590 (La.1989);
 
 State v. Savoy,
 
 487 So.2d 485 (La.App. 3rd Cir.1986). The mere fact that the defendant on trial and the person previously convicted have the same name does not constitute sufficient evidence of identity.
 
 Curtis,
 
 338 So.2d at 664. In
 
 State v. Westbrook,
 
 392 So.2d 1043 (1980), the supreme court found that along with defendant’s name, his driver’s license number, sex, race, and date of birth were sufficient evidence for the State to carry its burden of proving that this defendant was the same person previously convicted of another felony.
 

 See also
 
 State v. Gillam,
 
 03-0369 (La.App. 4 Cir. 6/18/03), 850 So.2d 804;
 
 State v. Payne,
 
 01-1730 (La.App. 4 Cir. 3/20/02), 814 So.2d 617.
 

 Here, the arrest register S-4 indicated that Peter Lewis was arrested for selling narcotics to an undercover officer on June 26, 1992. The bill of information in S-5 charged Peter Lewis with distributing a substance falsely represented to be cocaine on June 26, 1992. The docket master lists the same date of birth for Peter Lewis as that listed on the arrest register, and it also contains the same file/folder number. Although there were no fingerprints on the back of the bill of information, they were on the back of the arrest register, and information on the arrest register matched that in the cert. pack. Consistent with the cases cited above, there was sufficient evidence for the court to find that the State proved that the defendant was the Peter Lewis who pled guilty in case # 358-508. This claim also has no merit, and the trial court properly adjudicated the defendant a fourth offender.
 

 DECREE
 

 For the foregoing reasons, we affirm the defendant’s aggravated battery conviction and his adjudication and sentence to twenty years at hard labor as a fourth offender.
 

 CONVICTION AND SENTENCE AFFIRMED
 

 [1]
 

 . C(l)(r) is now designated C(l)(s).